(173 App. Div. 259)

### PEOPLE v. CLEARY.

(Supreme Court, Appellate Division, Second Department. June 2, 1916.)

FORGERY ⚖➙44(2)—GUILT—SUFFICIENCY OF EVIDENCE.

    In a prosecution for forgery in the second degree by forging an indorsement to a note, evidence *held* sufficient to sustain judgment of conviction.

    [Ed. Note.—For other cases, see Forgery, Cent. Dig. §§ 117½, 118; Dec. Dig. ⚖➙44(2).]

    Stapleton, J., dissenting.

Appeal from Criminal Term, Rockland County.

William V. Cleary was convicted of forgery in the second degree, and he appeals. Judgment affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Edmund F. Driggs, of Brooklyn, for appellant.
Wilber W. Chambers, Deputy Atty. Gen., for the People.

PER CURIAM. The dissenting opinion states succinctly considerations which make for the defendant, and yet are consistent with a finding of his culpability. The very fact that Allison and the defendant had been friendly for years is an explanation of Allison's silence as to the defendant's wrongdoing; for Allison's self-interest was ended when defendant took up the note, and Allison's friendship was but manifested when he forbore to expose the defendant. Allison's conduct from beginning to end was that of one who would shield, not pursue, the defendant. He was not even an informer, but was hunted

⚖➙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

out and compelled to testify for the prosecution, or to admit that he was a willful liar. He does not strike one as astute enough to play the part of an arch hypocrite.

Naturally the defendant denied his guilt; and naturally the bank officer who accepted the note for discount from the defendant testified that when he did so he believed that the note was genuine. The very fact that both Allison and the defendant were customers of the bank, that the defendant was accustomed to present notes for discount and had presented similar notes theretofore, might indicate that the officer would make and did make but a cursory inspection of such a note. In the course of things, the defendant could have indorsed Allison's name with little chance of detection, provided the bank officials accepted the paper. When it fell due, the defendant had but to take care of it. The defendant testifies that this note went to protest because he was absent and could not return to his home before the close of banking hours. If defendant had taken care of the note on its due day, Allison would not have received notice of protest. The fact is not without significance that, when defendant did take up the note by part payment and a renewal, another, not Allison, was the indorser of the renewal note.

The note itself was not produced at the trial. Naturally it would have been returned to the defendant. A genuine note produced by him would have made for him, not against him. On the other hand, a forged note might not have withstood scrutiny, or the testimony of witnesses skilled in penmanship, or well acquainted with the signature of Allison. Defendant would explain the absence of the note by his general custom of destroying such vouchers, or by the fact that, after he had been apprehended for another crime, his safe was taken into the possession of the district attorney. Defendant was facile as a penman, familiar with Allison's handwriting, accustomed to present notes for discount, and had presented successfully a series of similar notes, which he insists were genuine.

Save for the absence of the alleged forged instrument, the case necessarily turned upon the truth of Allison or the truth of the defendant; for the testimony of the bank official, as we have indicated, was naturally exactly what it would be unless he confessed himself a party to the forgery or neglectful in his duties. In People v. Poulin, 207 N. Y. at page 78, 100 N. E. at page 595, the court, per Willard Bartlett, J., say:

"The fact that a jury in a criminal case has chosen to believe one set of witnesses rather than another set, upon an issue where the conflict between them is irreconcilable, affords no ground in and of itself for interfering with the verdict. * * * To justify a reversal on the facts under such circumstances, the appellate court must be able to detect some reason why the version which has been adopted by the jury should have been rejected."

The judgment is affirmed.

STAPLETON, J. (dissenting). I dissent. The defendant was convicted of forgery on a general verdict. The indictment contained counts charging that he made and uttered the instrument, a promissory note. The note purported to be made by defendant to the order of Allison

and to be indorsed by Allison. The defendant discounted the note at a national bank doing business in the village of Haverstraw. It was not paid at maturity. Allison was seasonably notified. Cleary, who was out of town on the day it matured, discharged the obligation on the following day.

Allison's evidence is the sole support of the conviction. He says he did not indorse the note. He makes the following admissions: He and defendant had been friendly for a number of years. He had notice of nonpayment. He thereupon visited the bank in relation to the notice. He made no suggestion to the bank official to whom he spoke. He made no revelation to anybody for nearly five years, and then only after he was an unsuccessful candidate for office, and had attributed his defeat partly to the defendant, who was a factor of some strength in town politics. The only person to whom he revealed the transaction, before his testimony to the grand jury, was one who was charged with another crime. Defendant was without the state at the time, and Allison did not expect his return. Allison, desiring to aid the person thus charged, thought that such person could in some way be helped by the information.

Defendant denies the forgery. The cashier of the bank testified that Allison and Cleary had accounts at the bank. He was familiar with the signature of both. Allison at no time complained that the instrument was forged. The cashier was satisfied, at the time he discounted the note, that the signature purporting to be that of Allison was genuine. The five year old note was not produced on trial. Defendant did not keep paid notes. That he did not retain this particular one as a keepsake is deemed culpable in the opinion of this court. I cannot concur in this view. I should say it is exceptional for the ordinary man to store paid notes for a long time. Neither the cashier nor defendant was impeached.

The evidence of the cashier of a small bank, familiar with the signature of Allison and defendant, and charged with the duty not knowingly to take spurious paper, weighs something. Why should a jury be permitted to discard it in a system which requires facts to be established by evidence and which requires evidence to be weighed? By what evidence was the presumption of innocence overcome? I cannot answer these questions in support of the verdict and give satisfactory reasons. People v. Cignarale, 110 N. Y. 23, 27, 17 N. E. 135; People v. Smith, 6 App. Div. 234, 39 N. Y. Supp. 1009. The case cited in the prevailing opinion (People v. Poulin, 207 N. Y. 73, 78, 100 N. E. 593) is a case in which there was a conceded murder. It was left to the jury to say which of the only two persons who were present at its commission was telling the truth. There was no other evidence on either side. The distinction in the case at bar is that there was additional credible evidence of substantial weight from an unimpeached and apparently disinterested witness.